UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| B&P RESTAURANT GROUP, LLC<br>d/b/a THE RUM HOUSE OF NEW<br>ORLEANS, HIGHLIGHTS CATERING<br>AND GOURMET SHOP, LLC,<br>ISLAND TIME MANAGEMENT, LLC,<br>THE RUM HOUSE OF BATON<br>ROUGE, LLC, and THE RED DOG<br>DINER, LLC<br><br>VERSUS<br><br>EAGAN INSURANCE AGENCY, LLC<br>ABC INSURANCE, and AMGUARD<br>INSURANCE COMPANY | CIVIL ACTION<br><br>NO. 21-555<br><br>SECTION M (5) |

## ORDER & REASONS

Before the Court is a motion to remand filed by plaintiffs B&P Restaurant Group, LLC d/b/a The Rum House of New Orleans, Highlights Catering and Gourmet Shop, LLC, Island Time Management, LLC, The Rum House of Baton Rouge, LLC, and The Red Dog Diner, LLC (collectively, "Plaintiffs").[1] Defendants AmGuard Insurance Company ("AmGuard") and Eagan Insurance Agency, LLC ("Eagan") respond in opposition,[2] and Plaintiffs reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants Plaintiffs' motion to remand, holding that because the non-diverse defendant Eagan was not improperly joined, diversity subject-matter jurisdiction is lacking.

---

[1] R. Doc. 8.
[2] R. Docs. 12 & 13, respectively.
[3] R. Doc. 16.

**I.     BACKGROUND**

This matter concerns an insurance coverage dispute. Plaintiffs are businesses operating several restaurants and catering companies under common ownership in south Louisiana.[4] In 2017, Plaintiffs engaged Eagan to act as their insurance agent.[5] Eagan allegedly "holds itself out as the leading advisor of the insurance needs of small businesses like [Plaintiffs]."[6] In December 2019, Plaintiffs' Katie Buchert and Eagan's Jordan Eagan began discussing the renewal of Plaintiffs' business insurance policy that was set to expire on March 15, 2020.[7] They had numerous conversations and one meeting wherein they talked about Plaintiffs' "insurance needs for each property and each line of coverage, including business interruption."[8] Plaintiffs allege that, during these discussions, Buchert mentioned the coronavirus (COVID-19) crisis and the "devastating" effect any shutdown would have on Plaintiffs' business.[9] Jordan Eagan allegedly advised Buchert that "any government mandated shutdown would be covered by the civil authority provision in the proposed renewal policy," but he did not advise her that the proposed renewal policy contained a virus exclusion or that Plaintiffs could purchase virus coverage.[10] According to Plaintiffs, they increased the policy limits of their business-interruption coverage on Jordan Eagan's advice, and purchased the AmGuard renewal policy, which was in effect from March 15, 2020, to March 15, 2021.[11]

On March 11, 2020, Louisiana Governor John Bel Edwards declared a state of emergency due to the COVID-19 outbreak.[12] On March 22, 2020, Governor Edwards imposed a stay-at-home

---

[4] R. Doc. 1-2 at 1-2.
[5] *Id.* at 2.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 2-3.
[11] *Id.* at 3.
[12] *Id.*

order, which was extended through May 15, 2020.[13] Since May 15, 2020, Louisiana has been moving through various phases that have guided the reopening of its businesses.[14]

In mid-March 2020, after the government-mandated shutdown of Plaintiffs' businesses, Buchert contacted Eagan about making a business-interruption claim.[15] Plaintiffs allege that Jordan Eagan only then informed Buchert that Plaintiffs' policy contained a virus exclusion but said "he 'believed' the business loss [was] covered by the civil authority provision."[16] On Plaintiffs' behalf, Eagan submitted a notice of claim to AmGuard for the business-income loss.[17] AmGuard denied the claim in late March 2020.[18] Plaintiffs eventually resubmitted the claim through counsel, but AmGuard again denied it.[19]

On October 14, 2020, Plaintiffs filed this suit against Eagan in Louisiana state court, contending that the AmGuard policy provided business-interruption coverage for their claim but in the alternative, if no coverage were found, alleging that Eagan negligently breached its duty as insurance agent by failing to properly advise Plaintiffs of the virus exclusion and of the availability of virus coverage for purchase, improperly advising Plaintiffs that the civil authority provision provided coverage in the event of a government-mandated shutdown, and failing to advise Plaintiffs of the temporal policy limits for the civil authority provision.[20] Plaintiffs filed a first supplemental petition for damages adding the following alleged breaches of duty by Eagan: failure to advise Plaintiffs of the availability of parametric policies that cover virus-caused business losses in amounts greater than the coverage in the AmGuard policy; failure to advise that the civil

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 3-4.

authority provision of the AmGuard policy was limited to four weeks while encouraging Plaintiffs to increase their business-loss coverage limits; and failure to advise Plaintiffs of other available "coverages for civil authority" that are not limited to four weeks of business loss.[21]

Eagan responded by filing exceptions of prematurity and nonjoinder of a party, namely, AmGuard.[22] The state court denied the exception of prematurity, granted the alternative exception of nonjoinder, and ordered Plaintiffs to file an amended petition naming AmGuard as a defendant.[23] Thereafter, Plaintiffs filed a second supplemental petition for damages adding AmGuard as a defendant and alleging that it breached the insurance contract and acted in bad faith by denying Plaintiffs' business-interruption claim.[24]

On March 17, 2021, AmGuard removed the state-court suit to this Court on the basis of diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[25] AmGuard, a citizen of Pennsylvania, is diverse from Plaintiffs, who are citizens of Louisiana.[26] Although AmGuard acknowledges that Eagan, like Plaintiffs, is a Louisiana citizen, AmGuard argues that Eagan was improperly joined, and thus, its citizenship can be disregarded.[27] According to AmGuard, the facts alleged in the complaint do not state a claim against Eagan.[28] Plaintiffs filed the instant motion to remand.[29]

## II.   PENDING MOTION

In urging remand, Plaintiffs argue that Eagan is properly joined because they have a stated a viable claim against it for breaching a duty it assumed as their insurance agent to advise them on

---

[21] *Id.* at 23.
[22] *Id.* at 7-16.
[23] *Id.* at 42.
[24] R. Doc. 1-3 at 3-8.
[25] R. Doc. 1 at 1.
[26] *Id.* at 3-4.  It is undisputed that there is more than $75,000 in controversy.  *Id.* at 8-9.
[27] *Id.* at 5-8.
[28] *Id.*
[29] R. Doc. 8.

coverage.[30] Plaintiffs say they have alleged that Eagan assumed this duty when Buchert expressed to Jordan Eagan a concern about coverage for a potential shutdown related to COVID-19 and he advised her that the AmGuard Policy would cover any business loss triggered by a COVID-19 government-mandated shutdown.[31] Thus, conclude Plaintiffs, Eagan did not place the coverage they specifically requested.[32]

In opposition, AmGuard argues that Plaintiffs' allegations do not state a claim against Eagan under Louisiana law.[33] AmGuard insists that Plaintiffs first received a copy of their policy in 2017; the relevant provisions of the policy did not change in any of the annual renewal policies; and Plaintiffs were responsible for reading their policy to understand that income losses arising from the COVID-19 crisis are excluded.[34] Further, AmGuard argues that Plaintiffs did not request a specific coverage related to COVID-19 which Eagan failed to procure, nor did Plaintiffs ask about the virus exclusion or their ability to purchase virus coverage.[35] AmGuard also argues that Eagan was not a specialist in procuring insurance for Plaintiffs' industry, and that Plaintiffs' alleged reliance on representations by Eagan was not reasonable.[36] Eagan echoes AmGuard's arguments and adds that Plaintiffs do not allege details of Buchert's conversations with Jordan Eagan and Plaintiffs never specifically requested that Eagan procure virus coverage or relied on statements on Eagan's website.[37]

---

[30] R. Doc. 8-1 at 5-7.
[31] *Id.*
[32] R. Doc. 16 at 2-4.
[33] R. Doc. 12 at 5-6, 10-15.
[34] *Id.* at 5-6.
[35] *Id.* at 10-12.
[36] *Id.* at 12-15.
[37] *See* R. Doc. 13.

### III.   LAW & ANALYSIS

#### A. Remand Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Remand to state court is appropriate if the federal court lacks subject-matter jurisdiction. Subject-matter jurisdiction must exist at the time of removal to federal court based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("[J]urisdictional facts must be judged as of the time the complaint is filed …."). Because federal courts have only limited jurisdiction, the removal statute is strictly construed, and any doubts or ambiguities are resolved against removal and in favor of remand. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing "that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723.

#### B. Improper Joinder

Pursuant to § 1332, a federal court may exercise diversity subject-matter jurisdiction "over a civil action between citizens of different States if the amount in controversy exceeds $75,000." *Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016). There must be complete diversity between the parties, meaning that no plaintiff may be a "citizen of the same State as any defendant." *Id.* at 136.

Section 1441(b)(2) permits a defendant to "remove a case from state court to federal court on the basis of diversity jurisdiction so long as none 'of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Wolf v. Deutsche*

*Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018) (quoting 28 U.S.C. § 1441(b)(2), and citing *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017)). However, the lack of complete diversity will not render an action non-removable if a party has been improperly joined. *Id.* Instead, if a "plaintiff improperly joins a non-diverse defendant, ... the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg*, 819 F.3d at 136. The defendant can demonstrate improper joinder by showing either (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant in state court.[38] *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013). The improper joinder doctrine is a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). "Under the second prong (inability to establish a cause of action), the court must determine whether 'there is arguably a reasonable basis for predicting that state law might impose liability.'" *Id.* (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross*, 344 F.3d at 462 (emphasis in original).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), the Fifth Circuit explained the procedure used by courts to determine whether a plaintiff improperly joined a non-diverse defendant. A court first looks "at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."

---

[38] AmGuard does not assert that Plaintiffs committed actual fraud in pleading the jurisdictional facts. *See* R. Doc. 1. Hence, only the second prong of the test for improper joinder is at issue in this case.

7

*Id.* at 573. However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder … the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The Fifth Circuit "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. In conducting such an inquiry, the district court may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Id.*

### B. Was Eagan Improperly Joined?

Plaintiffs allege that Eagan breached its duty as an insurance agent. Generally, in Louisiana, "an insurance agent owes a duty of 'reasonable diligence' to [its] customer" which "is fulfilled when the agent procures the insurance requested." *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 42 So. 3d 352, 356 (La. 2010). "[A]n insured has a valid claim against the agent when the insured demonstrates that: 1) the insurance agent agreed to procure the insurance; 2) the agent failed to use 'reasonable diligence' in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance[;] and 3) the agent acted in such a way that the client could assume he was insured." *Id.* at 356-57 (quotations marks and citation omitted). Thus, the insured has the responsibility to request the type and amount of insurance coverage needed, and "[i]t is not the agent's obligation to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs." *Id.* at 359. "[I]t is [the] insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *Id.*

8

Yet, an insurance agent's duty to use reasonable diligence includes advising the insured about those aspects of the insurance policy not within the knowledge generally held by a lay person when the agent's specific knowledge of the insured's individual situation triggers that duty to disclose. *Lightfoot v. Hartford Fire Ins. Co.*, 2010 WL 11545223, at *3 (E.D. La. Aug. 27, 2010) (citing *Isidore Newman*, 42 So. 3d at 358; *Parker v. Lexington*, 2006 WL 3328041 (E.D. La. Nov. 15, 2006)). The Louisiana supreme court's decision in *Isidore Newman* has since been applied in numerous cases, some concluding that claims were stated against the defendant insurance agent, and some not.[39]

The Fifth Circuit's pre-*Isidore Newman* decision in *Offshore Production Contractors, Inc. v. Republic Underwriters Insurance Co.*, 910 F.2d 224, 230 (5th Cir. 1990), initiated a narrow line of cases holding that an insurance agent's fiduciary duty to the insured may be heightened under circumstances giving rise to a special relationship between the agent and the insured. This case involved an insurance agent with 30 years' experience who specialized in insurance for oil-service companies. The insured, a maritime construction company hired by an oil company to construct a pipeline in the Gulf of Mexico, had expressed concern to the agent about losses it could incur from downtime caused by bad weather. An insurance policy was specially drawn for the insured but the drafters rejected language that would have extended coverage to include downtime caused by bad weather. The agent told the insured that the policy covered losses due to downtime for any

---

[39] *Compare Lightfoot*, 2010 WL 11545223, at *5 (no claim stated against agent because insured "never asked for … coverage" at issue and "never requested or mentioned a need for insurance covering" a related business entity), *and Hernandez v. State Farm Gen. Ins. Co.*, 2014 WL 1457813, at *3 (E.D. La. Apr. 14, 2014) (no claim stated against agent because the "complaint does not allege [agent] knew of any specific risk for which the [insureds] had expressed concern"), *with Numa C. Hero & Son, LLP v. Brit UW Ltd.*, 2018 WL 4184562, at *3-4 (E.D. La. Aug. 31, 2018) (claim stated against agent because insured "asked [agent] to procure insurance for its business and described the types of risks that its business was exposed to, including risks associated with construction," and agent "offer[ed] inaccurate advice about the protection afforded by the new insurance policies"), *and GeoVera Specialty Ins. Co. v. Joachin*, 2019 WL 3574295, at *10 (E.D. La. Aug. 6, 2019) (summary judgment denied agent given "conflicting evidence regarding whether [agent] knew that [insureds'] lack of residency would affect their coverage under the policy").

9

reason. The construction project was beset by weather delays, the insured made a claim for its losses, and the insurer denied the claim because weather delays were not covered under the policy. The insured sued the agent for breach of fiduciary duty. In upholding judgment against the agent, the Fifth Circuit observed that under the scenario presented – that is, "[w]here an agent is familiar with the insured's business, has reason to know the risks against which an insured wants protection, and has experience with the types of coverage available in a particular market" – an insurance agent acts as more than a "mere order taker" for the insured, and the agent's expanded "fiduciary duties include advising the client with regard to recommended coverage, investigating and ascertaining the financial condition of prospective companies, and notifying the insured of policy cancellations or terminations." Now, though, in the wake of *Isidore Newman*, which represents the pronouncement of the state's highest court on the subject, courts have rightly counseled that "the holding of *Offshore Production* should be closely cabined by the facts of the case." *Lightfoot*, 2010 WL 11545223, at *4 n.4.[40]

Here, on the one hand, Plaintiffs invoke the heightened duty of *Offshore Production* to urge that they have stated a claim against Eagan, having alleged that Eagan held itself out as a specialist in advising small businesses in insurance matters. But Plaintiffs also argue that they effectively asked Eagan to provide them with coverage for the virus even if Eagan had no

---

[40] Nevertheless, some courts have applied *Offshore Production* to find that the complaints before them stated breach-of-duty claims against insurance agents under a heightened duty for a failure to procure, or for inaccurate advice about, insurance coverage related to the COVID-19 pandemic. *See St. Charles Surgical Hosp. LLC v. HUB Int'l Ltd.*, 2021 WL 1561218, at *3-4 (E.D. La. Apr. 21, 2021) (no improper joinder where insured alleged that agent advertised itself as a specialist in healthcare insurance and discussed insurance needs with insured, thereby assuming a heightened duty to the insured); *VCS, LLC v. Mt. Hawley Ins. Co.*, 2021 WL 1399879, at *8-9 (E.D. La. Apr. 14, 2021) (no improper joinder where insured alleged that agent's website touted agent's specialty in insurance for the hotel industry, thereby assuming a heightened duty to the insured); *see also Jackson v. QBE Specialty Ins. Co.*, 2018 WL 3408182, at *9 (E.D. La. July 13, 2018) (no improper joinder where insured alleged that agent breached duty it voluntarily assumed to review the insurance application with the insured); *NOLA Ventures, LLC v. Upshaw Ins. Agency, Inc.*, 2014 WL 4675008, at *9 (E.D. La. Sept. 18, 2014) (summary judgment denied agent where there was "genuine issue of material fact as to whether [agent] voluntarily assumed a duty beyond acting with reasonable diligence to explain each policy provision").

heightened duty. On the other hand, AmGuard and Eagan lay claim to the teaching of *Isidore Newman* to contend that Plaintiffs have not stated a claim against Eagan. In doing so, they maintain that Plaintiffs never specifically requested coverage for the virus.

The Court is not called upon at this juncture – on a motion to remand – to resolve the factual conflict but examines only the allegations of the complaint. And given the allegations Plaintiffs make in their complaint, the Court sees no need to apply the heightened-duty analysis of *Offshore Production*. Instead, the question presented by the motion to remand can be resolved under the framework of *Isidore Newman*. Plaintiffs allege that during the renewal process Buchert specifically discussed with Jordan Eagan Plaintiffs' concerns regarding coverage for business losses resulting from government-mandated shutdowns due to the COVID-19 crisis. Eagan minimizes the discussion, emphasizing that Plaintiffs' allegation says the topic was only "mentioned." This characterization is too limited. Reading the allegations of the complaint as a whole, and in context, they can be understood to plausibly assert that the renewal discussions encompassed Buchert's expression of Plaintiffs' need for business-interruption insurance to guard against shutdowns mandated by the government, like Governor Edwards's stay-at-home order, to deal with the COVID-19 crisis. The allegations are not fairly read to suggest that Buchert's mention of the crisis was merely a casual reference to the news of the day, rather than connected to Plaintiffs' principal objective for the renewal discussions of obtaining insurance to cover business losses occasioned by the crisis. As a result of these discussions, Eagan's duty of reasonable diligence as Plaintiffs' insurance agent extends to obtaining the coverage Buchert is alleged to have requested on their behalf. The complaint also alleges that Jordan Eagan offered the advice that "any government mandated shut down would be covered by the civil authority provision in the proposed renewal policy" – an aspect of the renewal policy a factfinder may later

find not within the knowledge generally held by a lay person. Eagan's duty of reasonable diligence includes providing such advice accurately when given. The case at bar is simply not one in which the claim against the agent depends on the imposition of a duty to spontaneously advise a client about insurance coverage or to procure coverage the client has not requested. Plaintiffs' allegations are sufficient to raise at least a *possibility* of recovery against Eagan, which is all the jurisprudence requires to find that a party is properly joined for the purposes of a motion to remand.[41] And this outcome is reinforced by the Court's obligation to resolve all doubts against federal jurisdiction.

Therefore, because AmGuard and Eagan have not carried their heavy burden of demonstrating that the non-diverse Eagan is improperly joined, diversity subject-matter jurisdiction does not exist and the case must be remanded to state court.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion to remand (R. Doc. 8) is GRANTED, and this matter is REMANDED to state court.

IT IS FURTHER ORDERED that Plaintiffs' request for attorneys' fees and costs for the removal is DENIED.

New Orleans, Louisiana, this 10th day of May, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[41] In ruling on this motion to remand, the Court need not and does not pass on the merits of Plaintiffs' substantive claims against Eagan. Such claims are left for resolution in the state court.